IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDREA NICHOLE EGGLESTON MAYO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) | CASE NO. 1:18-cv-359-WKW-GMB [WO] |
| THE STATE OF ALABAMA DEPARTMENT OF HUMAN RESOURCES CHILD SUPPORT ENFORCEMENT DIVISION, *et al.*, | ) ) ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is the *pro se* complaint of Plaintiff Andrea Nichole Eggleston Mayo. Doc. 8. Also pending is a motion to proceed *in forma pauperis*. Doc. 2. Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 3. For the reasons stated herein, the Magistrate Judge RECOMMENDS that the motion to proceed *in forma pauperis* (Doc. 2) be GRANTED, but that the action be DISMISSED with prejudice prior to service of process pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)[1] for failure to state a claim upon which relief may be granted.

---

[1] This statute provides, in pertinent part, that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## I.  JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in the action pursuant to 28 U.S.C. § 1331.  The court finds adequate allegations to support both jurisdiction and venue in the Middle District of Alabama.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mayo filed her initial complaint in this matter on March 9, 2018.  In response to an Order from the court (Doc. 4), Mayo filed an amended complaint in an attempt to comply with the Federal Rules of Civil Procedure. Doc. 8.  In the amended complaint, she requested leave to file yet another complaint, which the court granted. Doc. 9.  The deadline to submit this second amended complaint has passed with no word from Mayo.  Accordingly, in this recommendation the court addresses the allegations set forth in Mayo's first amended complaint (Doc. 8), and the facts below are those alleged in that complaint.

Mayo names as defendants in this action the State of Alabama Department of Human Resources, Child Support Enforcement Division ("DHR"); Maurice A. Eggleston; Victoria Stuart; Ayanna Rearden; Judge J. Michael Conaway; and Judge Lori Collier Ingram. Doc. 1.  Construing her *pro se* complaint liberally, Mayo asserts Fourteenth Amendment due process and equal protection claims.  The majority of these claims stem from an *ex parte* custody hearing held in May 2013 during which Judge Conaway revoked Mayo's custody of her two children and granted custody to her former spouse, Maurice Eggleston. Doc. 8 at 3.  According to Mayo, Judge Conaway had no reason to transfer custody to Eggleston, who previously had visitation restrictions placed upon him for his failure to supervise the children properly. Doc. 8 at 3.  Eggleston is a Dothan, Alabama

2

police officer. Doc. 8 at 6. At one point, the custody case was transferred to Judge Collier Ingram, but later was returned to Judge Conaway. Doc. 8 at 6.[2]

Additionally, Judge Conaway ordered Mayo to pay child support at an unspecified time. Doc. 8 at 5. Mayo alleges that she later was found "not guilty" of owing child support but that Judge Conaway "continues to leave the order in place." Doc. 8 at 5–6. DHR, along with DHR employees Stuart and Rearden, have threatened to suspend Mayo's driver's license if she does not pay the child support ordered by Judge Conaway. Doc. 8 at 5. DHR also issued a warrant, which led to her arrest and the unlawful seizure of her vehicle. Doc. 8 at 7. The outstanding child support payments have negatively affected her ability to use credit, operate financially, obtain employment, and freely travel upon the roads without fear of harassment by DHR. Doc. 8 at 5. Mayo complained about these actions to the Federal Bureau of Investigation but it did not respond to her complaints. Doc. 8 at 2.

### III. STANDARD OF REVIEW

The same standards governing dismissal under Federal Rule of Civil Procedure 12(b)(6) also govern the review of a complaint under § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted. *See Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008). In evaluating the sufficiency of a complaint, the court must indulge reasonable inferences in the plaintiff's favor but is "not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly,

---

[2] Though Mayo has not submitted any of the relevant state-court filings to this court, an independent review of the records of the Circuit Court of Houston County, Alabama suggests that Mayo's allegations stem from the case styled as *In re the Marriage of Andrea N. Eggleston vs. Maurice A. Eggleston*, DR-2005-000302.05. That case remains active as of November 2, 2018.

3

"unwarranted deductions of fact" are not admitted as true for the purpose of testing the sufficiency of a plaintiff's allegations. *Id.*

A complaint may be dismissed if the facts as pleaded do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679 (explaining that "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 570 (2007) (retiring the prior standard allowing dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim"). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678. Further, when a successful affirmative defense, such as the statute of limitations, appears on the face of the complaint, dismissal for failure to state a claim also is warranted. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In addition to the pleading requirements of *Twombly* and *Iqbal*, a plaintiff's *pro se* status must be considered when evaluating the sufficiency of a complaint. "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429

4

U.S. 97, 106 (1976)). Yet any leniency cannot serve as a substitute for pleading a proper cause of action. *See Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (recognizing that although courts must show leniency to *pro se* litigants, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action") (internal quotation marks omitted). "While the pleadings of *pro se* litigants are liberally construed, they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (internal citations and quotation marks omitted).

### III. DISCUSSION

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives any citizen of the United States "of any rights, privileges, or immunities secured by the Constitution and laws[.]" Because the Fourteenth Amendment does not establish a private right of action, "it is only via the statutory vehicle of . . . § 1983 that a plaintiff may seek to vindicate [her] 14th Amendment rights." *McBride v. Murray*, 2006 WL 734542, at *2 (N.D. Ga. Mar. 17, 2006) (citing *BellSouth Telecomms., Inc. v. MCImetro Access Transmission*, 317 F.3d 1270, 1296 (11th Cir. 2003)). Thus, the court will address Mayo's Fourteenth Amendment claims through the lens of § 1983.

**A.    Judicial Immunity**

Mayo alleges that Judge Conaway and Judge Collier Ingram violated her due process rights when Conaway transferred custody of her children to her former spouse at the May 22, 2013 custody hearing without giving her notice and an opportunity to be heard.

Mayo also claims that Judge Conaway is biased against her but has not pleaded any factual matter demonstrating this bias.

Mayo's claims against Judge Conaway and Judge Ingram relate purely to matters brought before the two as presiding judges and to the rulings they issued in their judicial capacities during legal proceedings over which they had jurisdiction. "Judges are entitled to absolute immunity from suit for acts performed while they are acting in their judicial capacity unless they acted in complete absence of all jurisdiction." *Allen v. Florida*, F. App'x 841, 843 (11th Cir. 2012). Judicial immunity is immunity from suit, not just from damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Though judicial immunity is for the benefit of the public, and not the corrupt judge, *see Pierson v. Ray*, 386 U.S. 547, 554 (1967), a "judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of [her] authority." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (internal citation omitted). "Rather, [s]he will be subject to liability only when [s]he has acted in the clear absence of all jurisdiction." *Id.* Mayo's allegations against Judge Conaway and Judge Ingram do not establish that either acted in clear absence of jurisdiction. Judge Conaway and Judge Collier Ingram are entitled to judicial immunity.

**B.     DHR Immunity**

Mayo asserts a host of Fourteenth Amendment claims against DHR. She claims that DHR issued a warrant leading to her false arrest. Doc. at 5–7. She implicates DHR in the loss of custody of her children. Doc. 8 at 3. And she asserts that "DHR claimed to hold hearings, and told plaintiff that she missed them, when they sent letters to plaintiff notifying her of such hearings which arrived after the time and date of the hearing." Doc. 8 at 7.

DHR, as an arm of the state, is immune from liability.  The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.  "The Supreme Court has extended Eleventh Amendment immunity to prevent suits in federal court against a state by its own citizens." *Brown v. Fla. Dep't of Rev. Office of Child Support Enf.*, 697 F. App'x 692 (11th Cir. 2017) (internal citation omitted).  And it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court . . . when an 'arm of the State' is sued." *Manders v. Lee*, 388 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dis. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). "[B]ecause DHR is a state agency, the eleventh amendment to the United States Constitution bars all claims against the agency in federal court." *Kid's Care, Inc. v. St. of Ala. Dept. of Human Res.*, 2001 WL 35827965, at *1 (M.D. Ala. June 14, 2001).  "Prior state and federal court decisions establish that . . . DHR [is] entitled to sovereign immunity with respect to all forms of relief asserted against them." *Thomas v. Buckner*, 2011 WL 4071948, at *6 (M.D. Ala. Sept. 13, 2011) (internal citations omitted).  Because DHR is an arm of the state, it is entitled to absolute immunity from Mayo's claims.

C. **Employee Immunity**

Mayo avers that DHR employees Rearden and Stuart violated her rights to due process and equal protection by attempting to collect child support payments which she does not owe. Doc. 8 at 5–6.  She complains that Rearden and Stuart intend to take further action to punish her for overdue payments, and have threatened to suspend her driver's

7

license. Doc. 8 at 5.  Mayo asserts that Rearden and Stuart violated her due process rights at the May 2013 custody hearing. Doc. 8 at 3.  And she alleges that she fears prosecution. Doc. 8 at 5.

### 1. *Official Capacity*

To the extent Mayo sues Rearden and Stuart in their official capacities, they are immune from suit.  Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  State officials may not be sued in their official capacities unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, neither of which has occurred. *See Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996); *Pennhurst St. School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) ("The state of Alabama has not waived its immunity."). Rearden and Stuart are state actors entitled to sovereign immunity under the Eleventh Amendment for claims brought against them in their official capacities.

### 2. *Individual Capacity*

On the facts alleged in Mayo's complaint, Rearden and Stuart also are entitled to qualified immunity to the extent they are sued in their individual capacities.  Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Ftizgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability, but rather immunity from suit. *Pearson*

*v. Callahan*, 555 U.S. 223, 231 (2009). Consequently, the Supreme Court has "'repeatedly . . . stressed the importance or resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (internal citation omitted).

In determining whether a defendant is entitled to qualified immunity, the court first must determine whether the official was acting within the scope of her discretionary authority at the time of the alleged wrong. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1998). Discretionary authority encompasses those acts that fall within an employee's job responsibilities. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). If an employee was acting within her discretionary authority, the question becomes whether the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If it did and the constitutional right was clearly established, meaning that a reasonable official would have understood that her actions violated that right, the official is not entitled to qualified immunity. *See United States v. Lanier*, 520 U.S. 259, 270 (1997).

Mayo's claims survive the threshold question of whether Rearden and Stuart were acting within their discretionary authority, as ministerial acts such as locating absent parents, establishing or modifying support orders, and enforcing support obligations are within the discretionary authority of DHR workers. *See Jones v. Buckner*, 963 F. Supp. 2d 1267, 1274 (N.D. Ala. 2013). But Mayo's claims fail at step two of the qualified immunity analysis.

### a. Equal Protection Claim

"The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner." *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1336

(11th Cir. 2002). "An equal protection claim must allege that the plaintiff is a member of an identifiable group, was subjected to differential treatment from others similarly situated, and the difference in treatment was based on his or her membership in that group." *Glenn v. Brumby*, 724 F. Supp. 2d 1284, 1296 (N.D. Ga. July 2, 2010) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Mayo has alleged neither that she was treated differently from similarly situated individuals nor that she was discriminated against for belonging to an identifiable group. *See* Doc. 8. Therefore, her claim that Rearden and Stuart violated her clearly established equal protection rights does not survive 28 U.S.C. § 1915 review.

      **b.**    **Due Process Claim**

The courts recognize two types of due process claims—procedural due process claims and substantive due process claims. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Procedural due process requires that a party be afforded notice and an opportunity to be heard by a neutral decisionmaker before her rights are affected. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 553 (1965)). Substantive due process "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Mayo has not specified whether she is asserting a substantive due process claim or a procedural due process claim. To the extent she is attempting to assert a substantive due process claim,

10

she has not alleged that Rearden or Stuart denied any of her fundamental rights, so that claim fails.

If Mayo instead intends to assert a procedural due process claim, that cause of action also fails. Mayo has pleaded that Rearden and Stuart intend to take further action against her in order to obtain child support payments, and that she fears prosecution. Doc. 8 at 5–6. But she has not alleged that she has been deprived of notice and an opportunity to be heard before these hypothetical future actions. These allegations do not state a procedural due process claim.

**D.      Statute of Limitations**

Mayo also alleges that Eggleston violated her due process rights at the May 2013 custody hearing. Doc. 8 at 3. This claim is time barred. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.'" *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (quoting *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008)). In the state of Alabama, "that limitations period is two years." *Id.* Because the custody hearing occurred well more than two years before she filed suit, Mayo can no longer obtain relief under § 1983.

**E.      Notice of Criminal Conspiracy**

In her third cause of action, Mayo does not appear to seek relief from this court, but instead merely notifies the federal courts of an alleged criminal conspiracy to violate her constitutional rights. Doc. 8 at 7. To the extent Mayo does seek relief from this court, the court is unable to ascertain who comprises the alleged defendants, who was wronged by

these "named and unnamed" defendants, and what constitutional violations occurred. Doc. 8 at 7–8. These allegations do not state any cause of action with which this court is familiar.

Moreover, the undersigned previously instructed Mayo to amend her complaint to "(1) specify the conduct each defendant is allegedly responsible for, and (2) clarify which cause of action she is asserting against each defendant." Doc. 4 at 5. She was warned that the failure to comply with the requirements of the order might result in dismissal of her case. Doc. 4 at 7. Though the court acknowledges Mayo's *pro se* status, *pro se* litigants are required to comply with the Federal Rules of Procedure, which exist to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *LaCroix v. W. Dist. of Kent.*, 627 F. App'x 816, 818 (11th Cir. 2015) (internal citations omitted). Because Mayo's third cause of action constitutes classic shotgun pleading and is noncompliant with the rules of procedure, this provides an alternative basis for the recommendation that it be dismissed. *See LaCroix*, 627 F. App'x at 819 (upholding dismissal of a shotgun pleading complaint for failure to comply with Rule 8).

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that the motion to proceed *in forma pauperis* (Doc. 2) be GRANTED, but that the action be DISMISSED with prejudice prior to service of process pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

It is further ORDERED that Mayo is DIRECTED to file any objections to the report and recommendation **no later than November 16, 2018**. Any objections filed must

specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. Mayo is advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 2nd day of November, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE